UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------ x
ALI SHAMAN EL BEY,

                Plaintiff,

                -against-

BILL HILTON, *Security Supervisor, in his individual capacity*,

                Defendant.

------------------------------------------------ x

MEMORANDUM & ORDER

15-cv-3188 (ENV) (VMS)

VITALIANO, D.J.

Plaintiff Ali Shaman El Bey, proceeding *pro se*, filed this action against defendant Bill Hilton on May 28, 2015, alleging that he was arbitrarily denied access to a flight because his identification credentials were insufficient to allow him to travel. (Compl., ECF No. 1; Am. Compl. ¶¶ 6-8, ECF No. 6-1). Hilton has moved to dismiss. (Def.'s Mot., ECF No. 24). For the reasons that follow, the motion is granted, and this action is dismissed without prejudice for want of subject matter jurisdiction.

## Background[1]

El Bey is an Indigenous Taino Native, of Moorish Ancestry, who was born in New York,

---

[1] Given the procedural posture, background facts are drawn primarily from the amended complaint. *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 283 (S.D.N.Y. 2015) (explaining that, when evaluating a 12(b)(6) motion, "a court may consider the complaint, any written instrument attached to the complaint as an exhibit, or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit." (alterations, citation and internal quotation marks omitted)). Because the defendant also moves for dismissal on the basis of subject matter jurisdiction, however, the Court draws on some facts outside the complaint, but only with respect to its consideration of the Rule 12(b)(1) branch of the motion. *See Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 588 (S.D.N.Y.

1

but now lives Puerto Rico. (Am. Compl. ¶¶ 1, 9). Since 2000, Plaintiff allegedly was able to travel back and forth between New York and Puerto Rico without incident, even though his identification documents were not issued by the United States or by any state thereof. (Am. Compl. ¶¶ 9-10). His uneventful transit was interrupted on July 11, 2010, when El Bey allegedly was stopped before boarding his return flight from John F. Kennedy International Airport ("JFK") in Queens to Puerto Rico and was questioned about his credentials. (Am. Compl. ¶ 10). Following this incident, El Bey corresponded with the Transportation Security Administration ("TSA") to resolve his identification issue. (Am. Compl. ¶ 11). After 11 months of haggling with TSA officials, and after, he says, complying with their instructions, including the acquisition of compliant credentials that allowed him to travel back home on November 11, 2011, El Bey believed that, at last, all identification issues had been resolved with respect to his flights between New York and Puerto Rico. (Am. Compl. ¶¶ 12-14).

Notwithstanding plaintiff's understanding, on November 9, 2012, when he attempted to clear TSA screening at JFK for a flight to Puerto Rico, El Bey was once again stopped, and his credentials were questioned. (Am. Compl. ¶¶ 3, 6-8, 16-17). This TSA stop was made by defendant Bill Hilton, a TSA Security Supervisor. (Am. Compl. ¶¶ 3, 6-8, 16-17). Hilton asked El Bey if he had any other form of identification. (Am. Compl. ¶ 17). He replied, "yes," and gave Hilton his International Road Travel Identification. (Am. Compl. ¶ 17; Demartini's Decl., Ex. 1, ECF No. 24-3). After examining this document Hilton, still not satisfied, asked El Bey if he had any other identification. (Am. Compl. ¶ 18). Plaintiff then gave Hilton a document certified by the United States Department of State, recognizing his indigenous native status.

---

2004) (noting that, when evaluating subject matter jurisdiction, a court may reference "evidence outside the pleadings").

(Am. Compl. ¶ 18; Demartini's Decl., Ex. 1). Hilton told El Bey that he was unfamiliar with these other documents and passed them to another TSA employee, who left the checkpoint with the documents. (Am. Compl. ¶¶ 19-20).

After approximately two hours, the second TSA employee returned and handed plaintiff's documents to Hilton. (Am. Compl. ¶ 15, 21-22). Defendant then gave them back to El Bey, but informed him, with a laugh, that he would not be allowed to fly. (Am. Compl. ¶ 22). Plaintiff says that he thereafter contacted Steve Golubic, the Director of the Department of Tribal Affairs for the United States Department of Homeland Security ("DHS"). (Am Compl. ¶ 25; Pl.'s Opposition, Ex. 1, ECF No. 21). With Golubic's assistance, El Bey was allowed to fly from New York to Florida, where he ultimately boarded a flight to Puerto Rico. (Am. Compl. ¶¶ 25-27).

Following the incident, Golubic sent El Bey a letter, dated February 8, 2013, which informed him that TSA's identity verification policy requires all adult passengers to provide a federal or state-issued photo ID for inspection before entering a TSA security checkpoint. (Demartini's Decl., Ex. 2). Golubic's letter further explained that a federally recognized Native American Tribal photo ID did not meet TSA's identity verification policy, but if an individual did not have an acceptable form of ID, that individual could either produce two alternative forms of ID that met the requirements or provide additional information so that TSA could reference publicly available databases to confirm the purported identity. (Demartini's Decl., Ex. 2). Golubic's letter also noted that "[t]hese requirements for acceptable IDs are included in Standard Operating Procedures (SOPs), which [TSA] must adhere to when conducting passenger security screening." (Demartini's Decl., Ex. 2). Lastly, Golubic advised that the TSA "followed and operated within the requirements of [the] SOP" when El Bey was denied entry through the TSA

checkpoint on November 9, 2012. (Demartini's Decl., Ex. 2).

Although the allegations in El Bey's amended complaint focus on the events of November 9, 2012, that incident was not the last time that plaintiff was turned away from a TSA checkpoint. (Am. Compl. ¶ 27). On November 15, 2013, El Bey approached a TSA checkpoint to catch a flight from JFK to Puerto Rico. (Am. Compl. ¶ 27). Once again, he had to wait while TSA employees reviewed his documents, and, once again, he was denied entry at the checkpoint. (Am. Compl. ¶¶ 28-29). The next day, however, he was able to board a flight home. (Am. Compl. ¶¶ 29-30).

On May 28, 2015, El Bey brought this action against TSA, Hilton and unnamed TSA security supervisors. (Compl.). On August 15, 2015, the Court dismissed, *sua sponte*, El Bey's claims against TSA and its employees in their official capacities, but permitted the claims against the individual defendants in their individual capacities to proceed. (Mem. & Order 4, ECF No. 4). Plaintiff thereafter filed an amended complaint on September 28, 2015, naming the same defendants. (Am. Compl.). By Order, dated March 14, 2016, the Court permitted the matter to proceed against the only named individual defendant, Bill Hilton, as a *Bivens* action and dismissed all other claims. (Second Mem. & Order 1-2, ECF No. 7).

At any rate, the gravamen of El Bey's amended complaint is that TSA personnel arbitrarily and capriciously denied him access to his November 9, 2012, flight, charging that the failure of TSA and its employees to consistently follow the law, rules, and guidelines, caused him damage by preventing him from timely attending to his responsibilities at home. (Am. Compl. ¶¶ 6-8, 32). As proof of damage, he cites vandalism to his property and a delay in the treatment of a sinus cavity tumor. (Am. Compl. ¶ 33). The amended complaint demands damages of $10 million. (Am. Compl. ¶ 34). On February 8, 2017, Hilton filed his motion to

dismiss. (Def.'s Mot.).

## Standard of Review

The burden of establishing federal subject matter jurisdiction when it is challenged by a Rule 12(b)(1) motion rests on the shoulders of the party invoking jurisdiction, not the party challenging it; proof of jurisdiction must be by a preponderance of the evidence. *See, e.g., Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 587-88 (S.D.N.Y. 2004). Although a court "must accept as true all material factual allegations in the complaint," it must not draw inferences favorable to the party asserting jurisdiction, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), and it "may resolve disputed factual issues by reference to evidence outside the pleadings," *Augienello*, 310 F. Supp. 2d at 588. Moreover, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Id.* (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).

On the other hand, when deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must (1) accept as true all of the plaintiff's factual allegations and (2) draw all reasonable inferences in his favor. *See Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014). It is also well established that, without regard to the nature of the motion directed at it, a court must construe a *pro se* litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017), especially when those pleadings assert civil rights violations, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Notwithstanding the obligation to read *pro se* complaints with "special solicitude" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations and internal quotation

marks omitted), courts must nevertheless ensure that complaints "plead facts sufficient 'to state a claim to relief that is plausible on its face,'" *Teichmann*, 769 F.3d at 825 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint fails to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

## Discussion

Hilton advances several arguments, both procedural and substantive, in support of his motion to dismiss. *See* (Def.'s Mem. 10-21, ECF No. 24-2). Because the Court has no power to address the merits of a case in the absence of subject matter jurisdiction over it, a challenge to jurisdiction must be resolved before reaching any other challenge. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002) ("Until we determine whether the District Court properly exercised subject matter jurisdiction . . ., we cannot address the merits . . . ."). The Court, therefore, turns first to Hilton's contentions in support of the Rule

12(b)(1) branch of his motion.[2]

Federal courts, unlike their state brethren, are courts of limited jurisdiction. *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). "A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." *Tait v. Powell*, No. 16-cv-06377 (ENV) (RER), --- F. Supp. 3d ----, 2017 WL 946300, at *2 (E.D.N.Y. Mar. 10, 2017) (quoting *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 424 (E.D.N.Y. 2017)); Charles Alan Wright et al., 13 Federal Practice & Procedure § 3522 (3d ed. 2008); *see also Vera v. Republic of Cuba*, No. 16-1227, --- F.3d ----, 2017 WL 3469204, at *4 (2d Cir. Aug. 14, 2017) ("[S]ubject matter jurisdiction 'functions as a restriction on federal power'" (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104, 72 L. Ed. 2d 492 (1982))). Consequently, given their limited role in the judicial system established by our Constitution, federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case when they find subject matter jurisdiction lacking. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316, 126 S. Ct. 941, 950, 163 L. Ed. 2d 797 (2006) ("Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases; . . . [it] must be considered by the court on its own motion, even if no party raises an objection."); *Durant*, 565 F.3d at 62 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.

---

[2] Because the challenge to jurisdiction is resolved against plaintiff, no opinion on defendant's alternative arguments for dismissal can, or will, be expressed. *See D.A. by Almarante v. Target Corp.*, No. 16-CV-8991 (JPO), 2017 WL 2062991, at *3 n.1 (S.D.N.Y. May 15, 2017) (declining to address plaintiff's alternative arguments when plaintiff's motion for remand was granted on the basis of a lack of subject matter jurisdiction).

Ct. 42, 43, 53 L. Ed. 126 (1908)).

Hilton pins his jurisdictional argument to a statutory provision, 49 U.S.C. § 46110. *See* (Def.'s Mem. 11-14). This section of law provides that, with certain exceptions not applicable here, "a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (*l*) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110(a). Accordingly, if an agency action constitutes an "order" under § 46110(a), then the Courts of Appeals have exclusive jurisdiction over any challenge to that order. *See Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2nd Cir. 2001) (holding that "Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order"). Additionally, only "final orders" fall within § 46110's scope. *Paskar v. U.S. Dep't of Transp.*, 714 F.3d 90, 96 (2nd Cir. 2013) (citing *New York v. FAA*, 712 F.2d 806, 808 (2nd Cir. 1988)). A "final order" is one that "imposes an obligation, denies a right, or fixes some legal relationship." *Id.* As applied to this case, then, the question becomes: "Is El Bey challenging a final order within the terms of § 46110"?

The search for an answer begins with the recognition—and there appears to be no dispute on this point—that the identification procedures at TSA airport-security checkpoints are governed by the protocols set forth in TSA's SOP manual. *See* (Demartini's Decl., Ex. 2).

Moreover, though cold comfort to his principal grievance—Hilton's denial of El Bey's passage through the checkpoint on November 9, 2012—TSA affirmed to him that Hilton's stop had been in full accord with the SOP then in force.[3] *See* (Demartini's Decl., Ex. 2). Indeed, El Bey acknowledges that the November 9, 2012, incident, was not the only time that he had been denied entry through a TSA checkpoint on account of insufficient identity documentation. (Am. Compl. ¶¶ 10, 27-29). Plainly, whether El Bey recognizes it or not, a liberal reading of the pleadings reveals that, to obtain complete and ultimate relief, he must take head on the SOP protocols that denied him entry at a TSA checkpoint, both on November 9, 2012, and at other times. At a minimum, El Bey's complaint is "inextricably intertwined" with the SOP. *See Merritt*, 245 F.3d at 187 (concluding that § 46110 "also preclude[s] district courts from hearing claims that are 'inextricably intertwined' with review of orders that fall within its scope" (citation omitted)); *Griggs v. Lahood*, 770 F. Supp. 2d 548, 554 (E.D.N.Y. 2011) (noting that "individual capacity claims against government employees may not be heard in district courts when hearing those claims would cause the district court to perform a *de facto* evaluation of an order appealable under Section 46110").

Little discussion is needed to determine whether TSA's SOP checkpoint protocol is a final order within the meaning of § 46110. It has been found so by numerous courts before today. *See Blitz v. Napolitano*, 700 F.3d 733, 739-40 (4th Cir. 2012) (concluding that TSA's Screening Checkpoint SOP was a final order within the meaning of § 46110); *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 9-12 & n.1 (D.D.C. 2011) (collecting cases, holding that TSA's Screening Checkpoint SOP, "detail[ing] the mandatory procedures that [Transportation Security Officers] must apply in screening passengers at all airport checkpoints," is a final order within

---

[3] The Court takes judicial notice of the relevant statutory and regulatory provisions.

the terms of § 46110, and granting defendant's motion to dismiss for want of subject matter jurisdiction because the "plaintiff's Fourth Amendment claim is inescapably intertwined with a review of that order" (second alteration in original)); *Durso v. Napolitano*, 795 F. Supp. 2d 63, 65-69, 73 & n.3 (D.D.C. 2011) (same); *Gilmore v. Gonzales*, 435 F.3d 1125, 1129, 1133 (9th Cir. 2006) (concluding that a TSA Security Directive, mandating that passengers show identification to airline personnel before boarding a flight, fell within the terms of § 46110). Consequently, since El Bey's claims must, if they are to be successful, attack the SOP checkpoint identification protocols, his lawsuit falls within § 46110's orbit, and subject matter jurisdiction does not lie in this or any other district court.[4]

## Conclusion

For the reasons discussed above, defendant's motion to dismiss is granted pursuant to Rule 12(b)(1), and plaintiff's amended complaint is dismissed without prejudice to seeking relief in an appropriate forum.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

---

[4] In any event, any claim against Hilton would likely have been short lived since the record evidence demonstrates that he acted in full accord with what the SOP protocols required of him. That others might have given plaintiff a pass on those rules is of no moment.

The Clerk of Court is directed to mail a copy of this Order to the *pro se* plaintiff, to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       August 16, 2017

                                           s/Eric N. Vitaliano
                                           ERIC N. VITALIANO
                                           United States District Judge